<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NORTHEAST NEUROSURGICAL ASSOCIATES, | Civil Action No. 25-06288 (SRC) |
| Plaintiff, | OPINION |
| v. | |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | |
| Defendant. | |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court by way of Defendant Horizon Blue Cross Blue Shield of New Jersey's ("Defendant") Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) (the "Motion"), (Dkt. No. 10). Plaintiff Northeast Neurosurgical Associates ("Plaintiff") opposed the motion and filed a cross-motion to confirm the arbitration award (the "Cross-Motion"), (Dkt. No. 14). Defendant filed opposition to the Cross-Motion, (Dkt. No. 16), and a reply in further support of the Motion, (Dkt. No. 15). The Court reviewed the papers submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Motion will be **GRANTED** and the Cross-Motion will be **DENIED**.

**I.     PROCEDURAL HISTORY**

On May 30, 2025, Plaintiff filed a complaint against Defendant. (Dkt. No. 1). Defendant moved to dismiss the complaint on August 25, 2025. (Dkt. No. 10). Plaintiff filed opposition to

1

the Motion and filed a Cross-Motion on October 21, 2025. (Dkt. No. 14). Defendant filed opposition to the Cross-Motion, (Dkt. No. 16), and a reply in further support of the Motion, (Dkt. No. 15), on October 27, 2025.

Through its Motion, Defendant seeks a dismissal of Plaintiff's Complaint on the grounds that it fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## II. FACTUAL BACKGROUND

This case arises from Plaintiff's Complaint seeking to enforce an Independent Dispute Resolution ("IDR") determination issued under the No Surprises Act ("NSA"). Compl. ¶¶ 26-29. Plaintiff is a medical provider specializing in neurosurgery. ¶ 5. On December 15, 2023, Plaintiff provided medical treatment to patient O.P. at St. Joseph's Medical Center in Paterson, New Jersey. ¶ 6. At the time of treatment, O.P. was the beneficiary of a health plan issued by Defendant. ¶ 7. Following the procedure, Plaintiff submitted a bill for the services of Defendant seeking payment in the amount of $100,211.58 for O.P.'s procedure. ¶ 8. In response, Defendant allowed payment to Plaintiff in the amount of $4,142.50. ¶ 9. Plaintiff is an out-of-network provider with respect to Defendant and does not have a network contract that would determine or limit payment for Plaintiff's services to Defendant's members. ¶ 10. Because Plaintiff is an out-of-network provider and the services were emergent or unanticipated in nature, Defendant's partial payment was subject to the NSA, 42 U.S.C. § 300gg-111 et seq. ¶ 11. Pursuant to the NSA, if the payment dispute between the provider and insurer is not resolved during the negotiation period, the provider has the right to initiate arbitration under which the proper reimbursement amount is determined by a neutral arbitrator. 42 U.S.C. § 300gg-111(c)(1-

5); ¶ 14. Plaintiff initiated such arbitration and, on July 22, 2024, the arbitrator issued a written payment determination. ¶¶ 15-16. The substantive portion of that written determination states:

> iMPROve Health has reviewed your Federal Independent Dispute Resolution (IDR) dispute with reference number DISP-1210850 and has determined that NorthEast Neurosurgical Associates is the prevailing party in this dispute.
>
> After considering all permissible information submitted by both parties, iMPROve Health has determined that the out-of-network payment amount of $26,283.00 offered by NorthEast Neurosurgical Associates is the appropriate out-of-network rate for the item or service 61315 on claim number NA 780272401139518 under this dispute.

(Id.; Ex. A.)

Pursuant to the NSA, if it is determined in arbitration that an additional amount remains due, the insurer has 30 days from the date of the arbitration award to issue the additional payment. 42 U.S.C. § 300gg-111(c)(6). Defendant failed to issue the remaining arbitration payment to Plaintiff by the deadline of August 21, 2024. Compl. ¶ 20. Plaintiff filed its Complaint on May 30, 2025, seeking an order: (1) Confirming the IDR determinations per Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9; (2) directing Defendant to pay Plaintiff $22,140.50; and (3) attorney's fees, interest, and costs of suit. On August 25, 2025, Defendant filed its Motion seeking to dismiss the Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Defendant's Brief in Support of Motion to Dismiss) (Dkt. No. 10). On October 21, 2025, Plaintiff filed its Opposition and a Cross Motion seeking to confirm the arbitration award. (Plaintiff's Opposition Brief and Brief in Support of Cross-Motion to Confirm) (Dkt. No. 14). On October 27, 2025, Defendant filed opposition to the Cross-Motion, (Dkt. No. 16), and a reply in further support of the Motion, (Dkt. No. 15).

### III.  LEGAL STANDARD

#### A. Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations.  See id.  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  Id. at 1426.  The Court, however, may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint."  Id. (citations omitted).

#### B. Rule 12(b)(1)

A party seeking to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction must prove that the Court lacks "authority or competence to hear and decide the case before it." Northlight Harbor, LLC v. United States, 561 F. Supp. 2d 517, 520 (D.N.J. 2008) (citing

4

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5B FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004)).  The plaintiff bears the burden of pleading that jurisdiction is appropriate.  Id. at 521; see also Wright v. N.J./Dep't of Educ., 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction in order to defeat a motion under Rule 12(b)(1)."). In considering a 12(b)(1) motion, the court focuses on whether the court has jurisdiction to hear the claim and grant relief, not on whether the factual allegations entitle a plaintiff to relief.  See Maertin v. Armstrong World Indus., Inc., 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing New Hope Books, Inc. v. Farmer, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).  The court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction.  If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." United States ex rel. FLFMC, LLC v. TFH Publ's, Inc., 855 F. Supp. 2d 300, 304 (D.N.J. 2012) (quoting Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011)).

  **C. IDR Determinations Under the NSA**

  Congress enacted the NSA on December 27, 2020, to address "surprise medical bills." Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs., 587 F. Supp. 3d 528, 533 (E.D. Tex. 2022).  "Generally, the [NSA] limits the amount an insured patient will pay for emergency services furnished by an out-of-network provider and for certain non-emergency services furnished by an out-of-network provider at an in-network facility."  Id.  (citing 42 U.S.C. §§ 300gg-111, 300gg-131, 300gg-132).

  The NSA protects patients by relieving them of liability to pay for the procedure beyond their ordinary in-network insurance payments and instead has the provider and the insurer

5

negotiate or dispute the proper payment among themselves. 42 U.S.C. § 300gg-111(c)(1)(A). When an insurer makes an initial payment or denial of payment, the insurer and the healthcare provider must negotiate the proper payment for the next thirty-days. Id. Where, as here, the out-of-network provider is dissatisfied with the amount paid by the insurer and the parties are unable to resolve the dispute through negotiations, the parties may then proceed to the IDR process. Id. § 300gg-111(c)(1)(B). If the parties are unable to agree on the amount due, the statute provides a four-day period for either party to submit the dispute to the Secretary of Health and Human Services ("HHS"), initiating an IDR. Id. Under the NSA,

> The IDR entity must be certified through a process established by the HHS, the Department of Labor, and the Treasury, and must have "sufficient medical, legal, and other expertise" to make a determination under the NSA. Id. § 300gg-111(c)(4)(A). The arbitration process is "baseball-style," meaning that the provider and insurer each submit a final offer, and the IDR entity must select one of the two proposed amounts. See Texas Med. Ass'n, 587 F. Supp. at 534; 42 U.S.C. §§ 300gg-111(c)(5)(A)–(B). When choosing between the two offers, the IDR entity must consider a number of factors:

> (i) In general

> In determining which offer is the payment to be applied pursuant to this paragraph, the certified IDR entity, with respect to the determination for a qualified IDR item or service shall consider—

> (I) the qualifying payment amounts (as defined in subsection (a)(3)(E)) for the applicable year for items or services that are comparable to the qualified IDR item or service and that are furnished in the same geographic region (as defined by the Secretary for purposes of such subsection) as such qualified IDR item or service; and

> (II) subject to subparagraph (D), information on any

6

     circumstance described in clause (ii), such information as requested in subparagraph (B)(i)(II), and any additional information provided in subparagraph (B)(ii).

 (ii) Additional circumstances

   For purposes of clause (i)(II), the circumstances described in this clause are, with respect to a qualified IDR item or service of a nonparticipating provider, nonparticipating emergency facility, group health plan, or health insurance issuer of group or individual health insurance coverage the following:

   (I) The level of training, experience, and quality and outcomes measurements of the provider or facility that furnished such item or service (such as those endorsed by the consensus-based entity authorized in section 1395aaa of this title).

   (II) The market share held by the nonparticipating provider or facility or that of the plan or issuer in the geographic region in which the item or service was provided.

   (III) The acuity of the individual receiving such item or service or the complexity of furnishing such item or service to such individual.

   (IV) The teaching status, case mix, and scope of services of the nonparticipating facility that furnished such item or service.

   (V) Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if applicable, contracted rates between the provider or facility, as applicable, and the plan or issuer, as applicable, during the previous 4 plan years.

42 U.S.C. §§ 300gg-111(c)(5)(C). The IDR entity is also prohibited from considering usual and customary charges, the amount the provider would have billed for the item or service had the NSA not applied, or the reimbursement rates for the item or service by a public payor. 42 U.S.C. § 300gg-111(c)(5)(D).

7

### IV. DISCUSSION

Plaintiff argues that the IDR award under the NSA is binding and enforceable through § 9 of the FAA. (Dkt. No. 14-1). Plaintiff contends that the NSA's language ("shall be binding") implies judicial enforceability since Congress did not designate any exclusive administrative enforcement scheme. Id. at 6. Plaintiff argues that any other interpretation would render IDR awards meaningless. Id. Defendant counters that Plaintiff has no right to confirm and enforce IDR determinations in court. (Dkt. No. 10-1 at 13-14). Defendant offers three primary arguments. First, Defendant argues that the NSA does not permit confirmation per the FAA as the NSA does not invoke § 9 of the FAA. Id. at 9-10. Second, Defendant argues that Congress's choice to omit § 9 from the NSA indicates that Congress did not contemplate a private right of action. Id. at 12. Third, Defendant argues that the NSA prohibits judicial review except for vacatur of an IDR determination pursuant to § 10(a) of the FAA, and Congress delegated authority to federal agencies to enforce a payor's non-payment of IDR determinations. Id. at 15.

### A. The Court lacks jurisdiction to confirm the arbitration award because the IDR process is not an arbitration and there is no enforceable arbitration award.

Section 9 of the FAA establishes the process by which parties may seek to have a court confirm and enforce an arbitration award. 9 U.S.C. § 9. A court will only confirm an award if the arbitration was conducted pursuant to a written agreement between the parties; any award determinations from outside the scope of the valid agreement are not eligible for court confirmation. Id. Parties have one year from the grant of the award to move for a court's confirmation of that award in whatever court is specified in the agreement. Id. If no court is specified, parties may seek to have a court confirm the award in the same jurisdiction that the

8

arbitration occurred.  Id.

The FAA specifically provides for the enforcement of a written arbitration agreement:

> A **written provision** in any maritime transaction or **contract** evidencing a transaction involving commerce **to settle by arbitration a controversy thereafter arising out of such contract or transaction**, or the refusal to perform the whole or any part thereof, **or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal**, shall be valid, irrevocable, and enforceable . . .

9 U.S.C. § 2 (emphasis added).

Plaintiff argues that the IDR determination is enforceable through Section 9 of the FAA. (Dkt. No. 14-1 at 6-7). Plaintiff's reliance is misplaced, however, as Defendant correctly points out that the IDR process is not an arbitration as Plaintiff has no agreement with Defendant; the parties never agreed to the process. While there are superficial similarities between an IDR determination and an arbitration, the FAA is clear that it applies only where parties "in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9.

Here, Plaintiff and Defendant have no contract or written arbitration agreement. Their participation in the IDR process was statutorily compelled, with no prior agreement to submit to arbitration – both Plaintiff and Defendant were *required* to participate in the process by statute. The lack of a written agreement between the parties to submit to arbitration removes the IDR process entirely from eligibility for confirmation under the FAA as the "FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010).

Further, to the extent that Plaintiff argues that the IDR process is essentially an arbitration

as contemplated by the FAA, Plaintiff fails to recognize that key differences permeate the IDR and arbitration frameworks. For example, arbitration can proceed only where the parties have a clear, written agreement to arbitrate. The IDR process, by contrast, applies precisely when no such agreement exists, and the parties have been unable to resolve their dispute through any alternative means. Compare 9 U.S.C. § 2, with 42 U.S.C. § 300gg-111(b)(1)(B). Out-of-network providers like Plaintiff have no contractual relationship with insurers such as Defendant; accordingly, the NSA establishes a mandatory dispute-resolution mechanism for parties who are not in contractual privity and who have no other agreed-upon method for resolving their payment dispute. 42 U.S.C. § 300gg-111(b)(1)(B).

The process of coming to an IDR award determination is materially different from a traditional arbitration. After an insurer issues an initial payment or denial, the parties must engage in a 30-day open-negotiation period; if that fails, either party may initiate IDR with the HHS. Id. at (c)(1)(A)-(B). A certified IDR entity is then selected, and the parties submit "baseball-style" final offers, supported by permissible evidence, including the Qualifying Payment Amount and documentation of how it was calculated, information about patient acuity or the complexity of the service, provider-specific factors such as training or experience, facility characteristics relevant to the service, evidence of the parties' good-faith efforts during the open-negotiation period; and, if applicable, any prior contracted rates between the parties within the past four years. Id. at (c)(5). The NSA also prohibits reliance on certain categories of information, such as billed charges, usual and customary charges, government program rates, and a provider's acquisition costs, thereby limiting the record to objective factors directly connected to the service at issue. Id. The IDR entity must choose one of the two offers, without any modifications. Id. at (5)(A)(i). This

process differs fundamentally from arbitration: arbitration is a consensual, contract-based procedure that requires a valid agreement between the parties and grants the arbitrator broad authority to develop a remedy for the dispute, whereas IDR is a federally mandated process for providers and insurers who lack any arbitration agreement, and the process strictly confines the decisionmaker to selecting between the two final offers without discretion to impose an independent award as he may during a traditional arbitration. Compare 9 U.S.C. § 2, with 42 U.S.C. § 300gg-111(b)(1)(B). Further, while an arbitration can take place before any entity the parties agree may handle their dispute, 9 U.S.C. § 5, the individuals assigned to handle these specific disputes are subject matter experts certified by the HHS Secretary. 42 U.S.C. § 300gg-111(c)(4)(A)(i).

Thus, the very nature of the IDR process is too different from a traditional arbitration as contemplated by the FAA for this Court to find that Congress intended for the FAA to govern the IDR process. Absent a valid arbitration, this Court lacks the necessary jurisdiction to confirm an IDR award under the FAA.

For the foregoing reasons, Plaintiff's claim under Section 9 of the FAA (Count I) is **DISMISSED**.

**B. The NSA does not imply a right for judicial enforcement of IDR awards.**

Plaintiff further argues that where there is no exclusive jurisdiction imposed upon an administrative court or entity to confirm or vacate an IDR award, the fact that the IDR awards are legally "binding" carries an implicit judicial enforcement mechanism. (Dkt. No. 14-1 at 14-17). Plaintiff argues any other interpretation would essentially render the IDR useless. Id. Defendant counters that the NSA prohibits judicial review except for actions to vacate an IDR determination

per Section 10(a) of the FAA.  (Dkt. No. 10-1 at 15).

The NSA clearly lacks any language that would create a cause of action or right to have an IDR award confirmed by this Court.  As Defendant correctly notes, the NSA expressly bars judicial review of IDR awards except as to the specific provisions borrowed from the FAA – all of which are inapplicable to the matter at hand.  See 42 U.S.C. § 300gg-111(c)(5)(E)(i)(ii) (IDR awards "shall not be subject to judicial review, except in a case described" in 9 U.S.C. § 10(a); id. § 300gg-112(b)(5)(D) (incorporating the same).  This bar on judicial review strongly suggests Congress did not insert a private right of action into the statute.[1]

Plaintiff argues that the Court's failure to enforce the award would essentially render the IDR useless.  Were the NSA to create a right without an apparent remedy, that itself is strong evidence that Congress intended judicial enforcement.  Maine Cmty. Health Options v. United States, 590 U.S. 296, 324 (2020).  However, Plaintiff's argument fails as Congress created a robust system of administrative enforcement of IDR awards instead of judicial enforcement.  Even if those remedies are not currently being applied or utilized, the mere presence of "agency enforcement creates a strong presumption against implied private rights of action that must be overcome." Wisniewski v. Rodale, Inc., 510 F.3d 294, 305 (3d Cir. 2007).  This presumption cannot be overcome, because the plain language of the statute limited "judicial review" other than to vacate awards gained through misconduct.  42. U.S.C. § 300gg-111(c)(5)(E).

Although Plaintiff argues that nothing in the NSA indicates that the purported

---

[1] Moreover, the NSA's specific reference to the FAA § 10 concerning the right to vacate an award reinforces the idea that its exclusion of any reference to FAA § 9 – the enforcement provision – was calculated.  42 U.S.C. § 300gg-111(c)(5)(E).

administrative remedies preclude judicial enforcement, that argument overlooks the more significant point: Congress created a detailed administrative remedy in the NSA and omitted any corresponding judicial enforcement mechanism, signaling that it did not intend for courts to police IDR awards.  When Congress intends to authorize judicial enforcement, it does so expressly.  See, e.g., 5 U.S.C. § 580(c) ("A final award is binding on the parties to the arbitration proceeding, and may be enforced pursuant to sections 9 through 13 of title 9.").  Congress plainly knows how to provide a private right of action—and has done so in other statutes—but chose not to do so here.  Not only does the statute fail to create a private right of action, the NSA clearly bars judicial review of IDR awards except as to the specific vacatur provisions borrowed from the FAA – all of which, again, are inapplicable to the matter at hand.  See 42 U.S.C. § 300gg-111(c)(5)(E)(i)(ii) (IDR awards "shall not be subject to judicial review, except in a case described" in 9 U.S.C. § 10(a)).  The Court may not read into the statute a broader enforcement authority that Congress deliberately withheld.  See Modern Orthopaedics of NJ v. Premera Blue Cross, No. 2:25-CV-01087 (BRM) (JSA), 2025 WL 3063648, at *12 (D.N.J. Nov. 3, 2025) (finding that "the Court cannot interpret language forbidding judicial review except to vacate an award to mean forbidding judicial review except to vacate *or enforce* an award.")

Plaintiff argues that a distinction must be drawn between "judicial review" and "judicial enforcement."   (Dkt. No. 14-1 at 16-17.)   However, courts have held that "judicial review" includes actions that seek to confirm or enforce a dispute resolution award.  See e.g. Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust, 508 U.S. 602, 611 (1993) (explaining that that the Employee Retirement Income Security Act of 1974 (ERISA) "provides for judicial **review** of the arbitrator's decision by an action in the district court to **enforce**, **vacate**, or **modify**

13

the award. (emphasis added)). Further, Congress uses the term "judicial review" when referring to private causes of action. See 33 U.S.C. § 2236(b)(2) (creating a private right of "action to seek judicial review").

Instead of incorporating a private right of action into the NSA, Congress chose to empower the HHS to assess penalties against insurers for failure to comply with the NSA. See Id. § 300gg-22(a)-(b); 45 C.F.R. § 150.301 et seq. Pursuant to the NSA, the HHS set up an office within the Centers for Medicare and Medicaid Services ("CMS"), which is tasked with administering the IDR process. 42 U.S.C. § 300gg-111(a)(2)(B). The CMS solicits complaints from providers and compels payors to pay IDR awards where appropriate. See U.S. Gov't Accountability Off., GAO-24-106335, Private Health Insurance: Roll Out of Independent Dispute Resolution Process for Out-Of-Network Claims Has Been Challenging 35 (2023) at 34-35 (explaining that "[i]f CMS determines that a party is non-compliant with the IDR process regulations, the agency could require corrective actions or issue a civil monetary penalty against the party, according to CMS officials. For instance, in the case of failure to make a payment following an adverse payment determination, the agency would require the issuer to pay the provider the determined award amount.")

The Court therefore finds that Congress, in making these administrative enforcements, did provide a specific method for parties like Plaintiff to seek relief. Plaintiff correctly points out that most awards under the IDR process remain unpaid, and the DOJ, in its amicus brief before the Fifth Circuit, argues that current administrative enforcement procedures are "not comprehensive in multiple respects," leading to consistent under payment by insurers. U.S. Amicus Brief in Guardian Flight LLC v. Aetna Life Ins. Co., No. 3:24-CV-00680-MPS, 2025 WL 1399145, at *14

(D. Conn. May 14, 2025). However, alleged deficiencies and inadequacies in the state of the enforcement mechanisms do not negate the fact that Congress did, indeed, create an administrative enforcement regime. Plaintiff's mere dissatisfaction with an existing administrative remedy does not justify judicial intervention. The NSA establishes a clear administrative enforcement scheme, specifying the *exclusive* process for resolving out-of-network payment disputes and limiting judicial review to the narrow vacatur provisions set forth in FAA §10(a), none of which apply here. See § 300gg-111(c)(5)(E)(i)(II). The Court's role is therefore limited to applying the statute as written; Plaintiff's frustration with administrative remedies does not confer authority to overstep a clear statutory boundary. Plaintiff seeks to essentially invent a cause of action under the NSA, but a "fundamental principle of statutory interpretation [is] that absent provisions cannot be supplied by the courts." Rotkiske v. Klemm, 589 U.S. 8, 14 (2019).

An administrative option, however ineffective or inadequate in Plaintiff's view, exists to remedy Plaintiff's issues. See Alexander v. Sandoval, 532 U.S. 275, 290 (2001) (explaining that the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.") Where recognition of a private action would "frustrate the administrative scheme" Congress created, courts may not infer one. Id. Allowing providers to bypass the administrative scheme and seek judicial confirmation or enforcement would displace the administrative review, audit, and penalty mechanisms that the NSA expressly gives to the HHS, an outcome that would contradict the scheme Congress enacted. It would be incongruous to hold that Congress simultaneously intended a broad, implied right to seek judicial enforcement. Nothing in the NSA "unambiguously manifests" an intent to authorize private lawsuits by providers to enforce IDR determinations. Gonzaga Univ. v. Doe, 536 U.S. 273, 290 (2002). The

15

Court therefore concludes that the NSA does not create an express or implied private cause of action.

Finally, Plaintiff argues that Defendant waived the ability to move to dismiss by choosing not to petition the Court to vacate the IDR award. (Dkt. No. 14-1 at 22.) Plaintiff contends that "[p]ursuant to Section 9 of the FAA . . . the court must grant such an order unless the award is vacated, modified, or corrected as prescribed by the FAA." Id. The Court has already explained, supra, that Section 9 of the FAA has no bearing on the issue at hand. Further, Defendant is not moving to vacate or otherwise challenge the validity of the IDR award—it is challenging Plaintiff's method of enforcement. The Court therefore finds Defendant did not waive its argument to dismiss the case.

For the foregoing reasons, Plaintiff's claim under the NSA (Count II) is **DISMISSED**.

V. **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Confirm Arbitration is **DENIED** and Defendant's Motion to Dismiss is **GRANTED**. An appropriate order will follow.

    /s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: November 25, 2025